IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Thomas M. Fair, Jr., | ) | |
| | ) | Civil Action No. 6:13-2940-RMG-KFM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| Brian P. Stirling, Dr. John B. | ) | |
| Tomarchio, and Dr. Randolph | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

       This matter is before the court on the motion for summary judgment filed by the defendants Brian P. Stirling and Dr. John B. Tomarchio  (doc. 28).  The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       The plaintiff is a prisoner of the South Carolina Department of Corrections ("SCDC"), incarcerated at Lee Correctional Institution.  Stirling is the Director of SCDC, and Dr. Tomarchio is the Medical Director of SCDC.  The third defendant, Dr. Randolph, is an optometrist providing optometry services to SCDC as an independent contractor (doc. 28-2, Randolph aff. ¶ 2).  The plaintiff claims that the defendants violated his constitutional rights by being deliberately indifferent to his serious medical needs.

       The complaint was filed on October 28, 2013, and Director Stirling and Dr. Tomarchio filed an answer on January 28, 2014, denying the allegations.  On May 5, 2014, these defendants filed the motion for summary judgment.  Dr. Randolph did not file an answer or dispositve motion, but rather provided his affidavit in support of the motion for

summary judgment.  By order filed May 6, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on July 14, 2014.

## **FACTUAL ALLEGATIONS**

The plaintiff alleges that in March 2013, he was examined by Dr. Randolph for "problems he was having with his eyes" (doc. 1, comp. p. 4).  Following the examination, the plaintiff claims he received a pair of prescription bifocals that were ineffective and caused him to experience headaches and "teary eyes" (*id*. p. 5).  He filed a grievance for the "incorrect prescription eyeglasses," to which Dr. Tomarchio responded, and another appointment was scheduled with Dr. Randolph for July 30, 2013.  The plaintiff was again examined, and Dr. Randolph wrote another prescription for a new set of glasses (*id*. p. 6). The plaintiff alleges that he received this second set of glasses on August 29, 2013, but they were likewise ineffective: "With no improvement in my vision, the headaches and teary eyes recurred" (*id*.).  The plaintiff signed up for sick call, and a third appointment was scheduled with Dr. Randolph for September 24, 2013.  The plaintiff claims that this examination was "no different than the last two," except that "Dr. Randolph removed his own eyeglasses off and on, at least fifteen times during the examination" (*id*. p. 7).  The plaintiff received a third pair of glasses on October 15, 2013, but complains they "were not bifocals and were definitely no better than the last two pairs" (*id*.).   He then filed his complaint in this court less than two weeks later, on October 28, 2013, seeking damages and an injunction "to change SCDC's policies and practices allowing this type of treatment" (*id*. p. 10).

2

In support of their motion for summary judgment, Director Stirling and Dr. Tomarchio provide the affidavit of Dr. Randolph (doc. 28-2, Randolph aff.). Dr. Randolph states that he reviewed the plaintiff's relevant medical records[1] and is familiar with his case (*id*. p. 1). He states that he did in fact examine the plaintiff three times and that the plaintiff received a new pair of prescription glasses after each visit. He also states that during the last visit, he suspected the plaintiff of malingering, but that he still wrote a new prescription for another set of glasses (*id*. p. 2).

In response to Dr. Randolph's affidavit, the plaintiff argues that if Dr. Randolph thought he was malingering, he should not have authorized another pair of glasses for him (doc. 36, resp. in opp. p. 9).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

---

[1] The medical records are cited as an exhibit to the affidavit but were not filed with the court.

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Failure to Exhaust

Although not raised by Director Stirling and Dr. Tomarchio in their motion for summary judgment, the plaintiff's obvious failure to exhaust his administrative remedies bars his suit here against them, as well as Dr. Randolph. *See Anderson v. XYZ Correctional Health Servs., Inc.* 407 F.3d 674, 683 (4th Cir. 2005) (a district court has the authority to dismiss a complaint sua sponte for failure to exhaust administrative remedies "where the failure to exhaust is apparent from the face of the complaint").

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. See *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  "[T]he PLRA's exhaustion requirement is mandatory," *Anderson*, 407 F.3d at 677, and "applies to all

4

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense[2] that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681. "[U]nexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211 (citation omitted). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. It also has the "potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.*" Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

"The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik v. Ward*, 8:08-cv-1886-RBH, 2010 WL 936777, at *2 n.4 (D.S.C. March 16, 2010). The policy is summarized as follows:

> After an unsuccessful attempt at informal resolution of the problem(s) by submission of a Request to Staff Member Form or by discussion of the complaint with the appropriate supervisor/staff, (1) an inmate must fill out a Form 10–5, Step 1, and give the form to an employee designated by the Warden

---

[2]The defendants pleaded failure to exhaust administrative remedies as a defense in their answer (doc. 16, answer p. 3).

(not the Inmate Grievance Coordinator) within fifteen days of the alleged incident; (2) the grievance must then be numbered and entered into SCDC's automated system within ten working days, and the Institutional Inmate Grievance Coordinator (IGC) notified; (3) the IGC must then, within ten working days, finalize the grievance in the system and attempt to informally resolve the issue; if the problem cannot be resolved informally, the IGC will conduct a complete investigation and make recommendations for disposition of the matter to the Warden; (4) the Warden must respond to the inmate, in writing, within forty days from the date the grievance was formally entered into the system by the IGC, then the IGC has five working days to serve the Step 1 response to the inmate; (5) the inmate may then appeal the Warden's response to the Division Director of Operations by completing a Form 10–5a, Step 2, and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (6) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal within another five "calendar days" and the Branch must present the Step 2 appeal to the responsible SCDC official, i.e. the Division Director of Operations, for a response; (7) the Division Director of Operations then has sixty days from the date the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (8) the IGC has five days to serve the inmate with the Step 2 response.

*McFadden v. Reynolds*, C.A. No. 3:13-439-JMC-JRM, 2013 WL 1838656, at *3 n.2 (D.S.C. April 11, 2013) (citing SCDC, Inmate Grievance System, GA–01.12, § 13.4 (Oct. 1, 2010)), *adopted by* 2013 WL 1838644 (D.S.C. May 1, 2013).

The plaintiff alleges that he filed a grievance for the "incorrect prescription eyeglasses" after his first appointment in March 2013. On May 2nd, he appealed Dr. Tomarchio's response that no further action was warranted. He then had the second examination on July 30th and the third on September 24th, and he received his third pair of glasses on October 15th (comp. pp. 5-8). It is clear from the plaintiff's own chronology that he did not exhaust his administrative remedies, as his complaint here was filed less than two weeks after he received his third pair of glasses. The plaintiff cannot rely on his May 2nd grievance appeal to satisfy the exhaustion requirements of the PLRA, particularly when he was rescheduled for follow-up appointments to address his complaints. Accordingly, this suit is

barred against all defendants, including Dr. Randolph, by the exhaustion requirements of the PLRA.

***Deliberate Indifference to Serious Medical Needs***

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference

7

that can offend 'evolving standards of decency' in violation of the Eighth Amendment."

*Estelle*, 429 U.S. at 106  Mere negligence or malpractice does not violate the Eighth Amendment. *Id.*  Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

While the plaintiff may have shown that his eye problems constituted a serious medical need by virtue of the fact that prescription glasses were issued, he has presented no evidence whatsoever that the defendants were deliberately indifferent.  To the contrary, his complaints resulted in three successive eye examinations by Dr. Randolph, with a new pair of eyeglasses prescribed each time in an effort to correct his vision.  There is no evidence in the record that Dr. Randolph or anyone else refused to treat him nor that the treatment provided was purposefully inadequate or harmful.  Indeed, though he suspected on the third visit that the plaintiff was malingering, Dr. Randolph gave the benefit of the doubt to the plaintiff and prescribed another pair of corrective glasses.  Having failed to present any evidence of deliberate indifference, the plaintiff's Eighth Amendment claim is meritless.

### Qualified Immunity

Director Stirling and Dr. Tomarchio further argue that they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known.  This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*  In

8

addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  As discussed above, the plaintiff has failed to show that these defendants violated his constitutional rights.  Therefore, Director Stirling and Dr. Tomarchio are entitled to the protections afforded by the doctrine of qualified immunity.

### Eleventh Amendment Immunity

To the extent the defendants are sued in their official capacities for monetary damages, they correctly assert that they are immune from suit in this court.  As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court.  *See* S.C. Code Ann. § 15-78-20(e).

### Respondeat Superior

To the extent the plaintiff alleges Director Stirling or Dr. Tomarchio acted in a supervisory capacity to deny him his constitutional rights, this claim fails.  The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977).  The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2)  the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and, (3)  there is an "affirmative causal link" between the

supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.).  The plaintiff has failed to establish the three elements with regard to Director Stirling and Dr. Tomarchio.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants Director Stirling and Dr. Tomarchio's  motion for summary judgment (doc. 28) be granted.  It is further recommended that the plaintiff's complaint be dismissed as to Dr. Randolph.

s/ Kevin F. McDonald
United States Magistrate Judge

October 27, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).